KORULA T. CHERIAN (SBN 133697)
ROBERT M. HARKINS, JR. (SBN 179525)
RUYAKCHERIAN, LLP
1936 University Ave, Suite 350
Berkeley, CA  94704
Telephone: (510) 944-0190
sunnyc@ruyakcherian.com
bobh@ruyakcherian.com

JOHN L. NORTH, ESQ. (GA SBN: 545580) (*pro hac vice* motion to be filed)
jln@hkw-law.com
STEVEN G. HILL, ESQ. (GA SBN: 354658) (*pro hac vice* motion to be filed)
sgh@hkw-law.com
JERRY C. LIU, ESQ. (GA SBN: 454899) (*pro hac vice* motion to be filed)
jl@hkw-law.com
MARTHA L. DECKER, ESQ. (GA SBN: 420867) (*pro hac vice* motion to be filed)
md@hkw-law.com
HILL, KERTSCHER & WHARTON, LLP
3625 Cumberland Blvd., Suite 1050
Atlanta, GA 30339
Tel: (770) 953-0995
Fax: (770) 953-1358

*Attorneys for R.N Nehushtan Trust Ltd.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| **R.N NEHUSHTAN TRUST LTD.**, <br><br> Plaintiff, <br><br> v. <br><br> **APPLE INC.**, <br><br> Defendant. | Case No. _____ <br><br> **COMPLAINT FOR PATENT INFRINGEMENT** |

R.N Nehushtan Trust Ltd. ("RNN Trust") hereby institutes this patent litigation against Apple Inc. ("Apple") for direct infringement of U.S. Patent Nos. 9,642,002 (the "002 Patent") and 9,635,544 (the "544 Patent"), attached as Exhibits A and B hereto. Apple's cellular communication devices (including iPhones, Apple Watches and iPads) directly infringe one or more claims of each of these patents.

- 1 -
COMPLAINT FOR PATENT INFRINGEMENT

## I. THE PARTIES

1. RNN Trust is an Israeli Corporation, which holds all right, title and interest to the 544 and 002 Patents, including all rights to sue for and recover on all past, present and future infringements of the 002 and 544 Patents.

2. Apple is a California corporation with its headquarters located at 1 Infinite Loop, Cupertino California, 95014.

3. Apple can be served this complaint via its registered agent, CT Corporation System, at 330 N. Brand Blvd., Ste 700, Glendale, CA 91203.

## II. VENUE

4. This Court has federal subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a) as this action arises under the United States Patent laws, including but not limited to 35 U.S.C. § 271(a).

5. This Court has personal jurisdiction over Apple as its headquarters lies in Cupertino California and, upon information and belief, a substantial amount of the infringing activity has taken place and currently takes place in this jurisdiction.

6. Venue is appropriate in this jurisdiction under 28 U.S.C. § 1400(b) because Apple resides in this judicial district.

## III. BACKGROUND REGARDING THE 002 AND 544 PATENTS

7. The 002 and 544 Patents are members of a family of patents that have a priority date spanning back to 2004. The invention took place during the nascent growth of the smart phone market.

8. Rafi Nehushtan is the inventor of the 002 and 544 Patents. Rafi worked in the area of network security and foresaw problems associated with cloning and hacking of smart phones. The existent password technology did not adequately address these problems, as described in the specifications of the 002 and 544 Patents. For instance, the 002 Patent states,

> A security vulnerability exists in cellular devices. In even the most secure of current devices it is currently possible to read sensitive information from a cellular device (source) and write it into a new cellular device (destination) thus making the destination device identical to the source device with regards to the cellular network.

> This enables the destination device to make calls, which are then billed to the source device. Such sensitive information may include device information such as the network identity of the device. It may also include personal information such as the user's personal telephone book.
>
> <u>Exploiting the same vulnerability it is also possible to copy sensitive information from a source device to a destination device</u>, thus enabling an end-user device upgrade without the know ledge of the cellular provider. Likewise it is possible to steal a device in one country and sell it in another country after a new operating system has been written into the stolen device.

Col. 1, lines 25-42 (emphasis added).

9.  Rafi Nehushtan solved these problems and vulnerabilities through the development of cellular communication security technology that included, amongst other components, an access restrictor and a device unique security setting ("DUSS") that would permit operating system and settings updates and the like once the access restrictor verified that the DUSS received with the update was correct.

10. The 002 and 544 Patents describe in great deal the numerous ways in which the DUSS can be constructed, including from information derived from device unique information (e.g., electronic serial number or A-Key) in combination with random information. For instance, the 002 Patent states,

> In the following, the production of individual passwords or command codes is explained.
>
> Whether considering password values, read instructions, write instructions, DM code or other device commands which are to be changed or added, the values may be constructed as follows:
>
> <u>The construction may use one or more random values, whether numeric, alphabetic, alphanumeric or any other. The random values may be memory areas in the device's operating system or designated fields</u>.
>
> The construction may use a value generated from the contents of the NUM field.
>
> The construction may use a value generated from the contents of the ESN field.

>The construction may use a value generated from the contents of the A-KEY field.
>
>The construction may use a value generated from the contents of the SSD field.
>
>The construction may use a product or a function of the contents of one or more of the following value fields:
>
>NUM field,
>ESN field,
>A-KEY field,
>SSD field, and
>
>a random value or random values. The random values may be memory areas in the device's operating system or designated fields as before.
>
><u>The construction may further use a value generated from an algorithm which is time-dependent and generates a different code for every second, minute or time interval</u>.  Further variation or alternative variation may then be introduced into the result based upon for example one or more of the following:
>
>Time.
>Challenge-response from the device's keypad.
>NUM field,
>ESN field,
>A-KEY field,
>SSD field,
>
>A random value or random values (The random values may be memory areas in the device's operating system or designated fields), and
>
>A seed value or values.
>
>The above described value is hereinafter designated ALGI.
>
>The value can be changed every time the device is connected to the system so that a one-time password, command or code results.

Col. 12, lines 9-56 (emphasis added).

COMPLAINT FOR PATENT INFRINGEMENT

11. The 002 and 544 Patents also provide numerous and detailed examples of how the inventive technology could be implemented. For instance, the 002 Patent describes the use of the inventive technology for device initialization as follows:

> Device Initialization:
> <u>Device initialization according to the preferred embodiments comprises writing a new ESN to the database, reading the A-KEY from the database, generating a new password for the device from a function of one or more of the NUM, ESN, A-KEY fields and random values, writing the password to the database, and setting the password in the device</u>. Setting the password comprises sending the appropriate commands in data packets which, when written into the interface to which the cellular device is connected, are able to affect a password change. The server then waits for the appropriate response from the cellular device as received from the client program, makes additional necessary changes to the device and, if needed, replaces the operating system.

Col. 20, lines 43-57 (emphasis added).

12. The claims of the 002 and 544 Patents specifically describe and encompass the inventive technology, including Claim 5 of the 002 Patent as follows:

> A cellular communication device comprising a processor, a memory and a data mode, said data mode allowing reading and writing of data in said memory and changing of settings on said cellular communication device, said settings comprising personal data, cellular communication device configuration data and technical data relating to the cellular communication device; wherein
>
> said cellular communication device <u>also comprises an access restrictor to restrict use of said data mode in accordance with a device unique security setting, the device unique security setting provided remotely to said cellular communication device using a predetermined security protocol</u>;
>
> <u>said device unique security setting is obtained remotely and provided to the cellular communication device before the data mode is used</u>;
>
> said data mode permits actions comprising uploading, maintaining or replacing an operating system in said cellular communication device that are provided by a cellular provider using an active connection; the device further being configured to carry out one member of the group consisting of:

        enabling said cellular communication device to use said data mode when it is determined that said device unique security setting is correct; and

        disabling use of said data mode when said active connection is no longer active.

(Emphasis added.)

13. Claim 5, and the other claims of the 002 and 544 Patents, provide a technical improvement over the conventional technology then existent for securing cellular communication devices. The elements or combination of the elements of the claims describe security technology that was not well-understood, routine or conventional.

### IV.    COUNT I: DIRECT INFRINGEMENT OF THE 002 PATENT

14. RNN Trust incorporates herein by reference Paragraphs 1 - 13, as if stated herein.

15. Apple has made, offered for sale and sold cellular communications devices for at least the last six years that directly infringe at least Claim 5 of the 002 Patent in violation of 35 U.S.C. § 271(a). These devices include i-Phones, iPads and Apple Watches including the models identified in the charts attached hereto as Exhibits C-E (the "Accused Products").

16. The charts attached hereto as Exhibits C-E set forth evidence establishing that the Apple Accused Products meet each and every limitation of Claim 5 of the 002 Patent.

17. The infringements by the Accused Products of the 002 Patent have proximately caused injury to RNN Trust in an amount to be calculated by a reasonable royalty.

### V.    COUNT II: DIRECT INFRINGEMENT OF THE 544 PATENT

18. RNN Trust incorporates herein by reference Paragraphs 1 - 13, as if stated herein.

19. Apple has made, offered for sale and sold Accused Products for at least the last six years that directly infringe at least Claim 17 of the 544 Patent in violation of 35 U.S.C. § 271(a).

20. The charts attached hereto as Exhibits F-H hereto set forth evidence that the Apple Accused Products meet each and every limitation of Claim 17 of the 544 Patent.

21. The infringements by the Accused Products of the 544 Patent have proximately caused injury to RNN Trust in an amount to be calculated by a reasonable royalty.

**PRAYER FOR RELIEF**

WHEREFORE, RNN Trust prays that it be awarded the following relief:

1. A reasonable royalty based on Apple's past, present and future making, offer for sale and sale of the Accused Products, going back the last six years.
2. Interest on the reasonable royalty amount for past infringements.
3. Such other relief as this Court may deem just and appropriate.

**JURY DEMAND**

RNN Trust hereby demands a trial by jury on all issues triable to a jury.

DATED: March 18, 2022

*/s/Robert Harkins*
Korula T. Cherian, Cal. Bar No. 133697
Robert Harkins, Cal. Bar No. 179525
RUYAKCHERIAN LLP
1936 University Ave, Ste 350
Berkeley, CA  94704
Telephone: (510) 944-0190
sunnyc@ruyakcherian.com
bobh@ruyakcherian.com

*Attorneys for Plaintiff R.N Nehushtan Trust Ltd.*